FILED
2014 Feb-05 AM 08:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

KATHERINE G. PEARSON, )
)
Plaintiff, )
)
vs. ) CASE NO. 2:12-cv-04189-JEO
)
CAROLYN W. COLVIN, Acting Commissioner of Social Security, )
)
Defendant. )

# MEMORANDUM OPINION

Plaintiff Katherine G. Pearson brings this action, through counsel, pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income benefits ("SSI"). (Doc.[1] 1). The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013. The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on January 26, 2009, alleging disability beginning December 26, 2008. (R. 59, 148).[2] Her claim was denied initially. (*Id.*) Thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 21, 2011. (R. 59). At the hearing, Plaintiff, represented by an attorney, amended the alleged onset date to September 1, 2010. (*Id.*) Following the hearing, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act since the date the application was filed. (R. at 59, 70). He also found that she had a residual functional capacity ("RFC") for light work with a sit/stand option for the period at issue. (R. 64, 69). In light of these findings, the ALJ issued a decision on June 7, 2011, denying Plaintiff's request for SSI. (*Id*. at 70).

Plaintiff requested the Appeals Council review the ALJ's decision and submitted additional evidence in the form of a brief. (R. 5). The Appeals Council declined Plaintiff's request for review. (R. 1-4). Therefore, the ALJ's decision represents the final decision of the Commissioner. (R. 1). Plaintiff thereafter timely filed this action for judicial review under 42 U.S.C. § 405(g), asserting that the findings of the Commissioner are not based upon substantial evidence and that improper legal standards were applied. (Doc. 1 at 2).

---

[2]Citations to (R. ___) are to the page of the administrative record, which is encompassed within Docs. 6-1 to 6-11.

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). As just noted, conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936

F.2d at 1145. "No ... presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The Facts

#### 1. Background

At the time of the decision, Plaintiff was fifty years old with a ninth grade education. (R. 56, 68, 148, 177). For the past 25 years, she earned little income–none for about 12 years and less than $1,200 a year for about 10 years. (R. 33, 155, 159, 177).

The ALJ found that Plaintiff has severe impairments, including a status-post right tibial plateau fracture, status-post right upper extremity fracture, and hepatitis C. (R. 61). The tibial injury was the result of domestic violence. She fractured her tibia and fibula and she required surgery, subsequent open reduction and internal fixation during December 2008 and January 2009. (R. 64, 283-296). She was deemed a candidate for total knee replacement in February 2009 if her knee became degenerative. (R. 353). She was released to weight bearing in March 2009. (R. 351). On June 30, 2009, she was diagnosed with arthritic symptoms. (R. 349). She was deemed eligible for knee replacement on January 26, 2010. (R. 341).

Plaintiff developed an infection in her right leg after having certain hardware removed in July 2010. (R. 431, 434-38). She was seen by doctors, prescribed medication, and evaluated for physical therapy. (R. 428, 430-31, 438). Due to

transportation issues, she was not able to comply with her physical therapy needs in October 2010. (R. 430). Plaintiff reported working out her transportation problems in a January 2011 medical visit. (R. 428). She was scheduled for a March 29, 2011 knee replacement if she was complaint with her physical therapy. (*Id.*)

Plaintiff's records show that she returned to the doctor on April 6, 2011, complaining of knee pain after she heard a loud pop when she got out of bed. The records reflect that she did not have the knee replacement surgery as of that date. (R. 507, 510).

Plaintiff had been using a cane to assist her in walking for the two years preceding the hearing. (R. 64).

**2. ALJ Findings**

The ALJ found that Plaintiff had certain severe physical impairments as follows: "status-post right tibial plateau fracture, status-post right upper extremity fracture, and hepatitis C." (R. 61). However, as to the hepatitis C, he found that "there was no evidence of any limitations due to" that condition. (R. 66). He also found her non-severe impairments included substance abuse, acute renal failure, anxiety, and depression. (R. 61-62). He further found that Plaintiff had the RFC to perform light work except that she could only lift and carry twenty pounds occasionally and ten pounds frequently; she could only sit for six hours per eight hour day; and she could climb ramps and stairs on no more

than on an occasional basis. (R. 64). He also found that she requires a sit-stand option and is unable to climb ladders, ropes, or scaffolds, or perform in extreme cold. (*Id.*)

**B. Analysis**

Plaintiff argues that the ALJ erred in failing to find favorably under the medical vocational rules at the sedentary level. (Doc. 9 at 7). Specifically, Plaintiff argues that (1) the RFC findings do not comply with SSR 96-8p[3] and 83-12[4], "requiring specificity in

---

[3]SSR 96-8p provides:

> **PURPOSE**: To state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits under titles II and XVI of the Social Security Act (the Act). In particular, to emphasize that:
>
> 1. Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.
>
> 2. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. Age and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age and natural body build, and the activities the individual was accustomed to doing in his or her previous work.
>
> 3. When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.
>
> 4. The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.
>
> 5. RFC is not the least an individual can do despite his or her limitations or restrictions, but the most.
>
> 6. Medical impairments and symptoms, including pain, are not intrinsically exertional or nonexertional. It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional

a function by function analysis and in the amount of time allocated to sitting and standing where alternating these functions is required;" (2) the ALJ did not utilize the option of obtaining a medical expert opinion; and, (3) he did not develop the record to obtain a consultative examination. (*Id*. at 9).

### 1. Finding Regarding Light Duty With Limitations

As noted above, the ALJ found that Plaintiff was capable of performing light work with certain limitations. (R. 64). Plaintiff asserts that this conclusion is wrong as she is at the sedentary level. (Doc. 9 at 7).

---

or nonexertional.

[4]SSR 83-12 provides, in part:

> **PURPOSE**: To clarify policies applicable in using the numbered table rules in Appendix 2 of Subpart P of the regulations as a framework for adjudicating claims in which an individual has only exertional limitations, and no specific rule applies because the individual's residual functional capacity (RFC) does not coincide with any one of the defined exertional ranges of work.

In the section under "Special Situations", it provides:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

It is well-settled that Plaintiff bears the burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."); 20 C.F.R. § 416.912(c) ("Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (stating that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

This court finds that there is substantial evidence to support the ALJ's RFC findings regarding Plaintiff. At the outset, he noted that it was necessary to consider all of Plaintiff's symptoms and the extent to which they can reasonably be accepted as consistent with objective medical and other evidence. (R. 64). He also noted that he had to "evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] functioning. (*Id.*) Thereafter, he found that Plaintiff had not worked since December 26, 2008, because of her knee and the subsequent medical procedures. (*Id.*) He noted and evaluated her other conditions,

including treatment in 2010 for renal failure, her previous drug and alcohol history, her hepatitis and hyperthyroidism, and her fractured right arm and clavicle. (R. 64-68).

Plaintiff testified at her hearing that her biggest problem was her knee impairment, and the second biggest problem was the hepatitis. (R. 25, 65). Next, was her thyroid problem. (*Id.*) After evaluating all the evidence, the ALJ concluded that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects ... are not credible to the extent they are inconsistent with the objective medical evidence, which is the basis of the ... [RFC] ...." (R. 66).

With regard to the knee, the evidence shows that following surgery Plaintiff was not compliant with the surgeon's instructions. Specifically, Dr. James P. Stannard stated that she was not properly using her walker as directed and that she had been "full weight bearing around the house. As a result, she has [increased chondral widening.]" (R. 353). Accordingly, he recommended total knee replacement due to anticipated degenerative changes that were a likely consequence of her noncompliance. (*Id.*) Because Plaintiff's condition had not worsened by her May 2009 visit, Dr. Stannard released her to weight bearing. Subsequent visits and x-rays demonstrated that the fracture healed and that she had arthritis. (R. 341, 345, 349, 362). Her January 2, 2010 visit indicated her eligibility for a total knee replacement, including that Dr. Chris Robert would "set her up for this." (R. 341).

On July 29, 2010, Plaintiff had surgery to remove hardware from her right knee. (R. 431, 434). In September 2010, the month of her disability onset, Plaintiff was seen twice by physicians. She complained of pain in her knee as a result of infection. Each time, physical therapy was ordered. (R. 434-38). Her September 12, 2010 medical records state that she was able to bear weight on her right leg without a problem during her visit. (R. 435). By October 27, 2010, it was noted that she was not complying with her physical therapy requirement due to transportation issues. (R. 430).

Plaintiff's January 5, 2011 hospital visit notes indicate that she was to have total knee replacement surgery on March 29, 2011, if she was compliant with her physical therapy regime. (R. 428). As of April 6, 2011, Plaintiff still had not had knee replacement surgery. (R. 508, 510).

The ALJ concluded that Plaintiff has the RFC to perform light work and that "non-compliance with her physician's requests after the surgery caused complications with her knee that was [sic] irreversible without further surgery...." (R. 68). Those findings are supported by the substantial evidence chronicled above. Additionally, the "light work" determination is supported by the findings of Consultative Examiner Dr. Rebecca Madden from May 2009. She found that Plaintiff's right knee had a range of motion of 5-90 degrees with pain, and motor strength of 4/5. (R. 302). She further noted that while Plaintiff's "right foot turned in slightly" and "she walked with a limp," there were "no other motor or sensory deficits in the lower extremities." (*Id.*) She concluded

concerning the knee that "[a]t this time, this woman has some difficulty ambulating. She would not be able to stand or walk for significant lengths of time. This may improve as she has further healing of her knee fracture, but it may not return to normal." (R. 302). While this assessment predates the 2011 hardware removal surgery and the subsequent infection, it still tends to support the ALJ's findings.

Concerning the hepatitis C, the ALJ found that Plaintiff receives shots weekly and is on medication that makes her tired. (R. 66). He further found that there was "no evidence of any limitations due to the hepatitis C" and that as of November 22, 2010, she was "stable on treatment." (*Id.*) "No physician has reported [Plaintiff] has limitations due to the hepatitis...." (*Id.* (citations omitted)). Plaintiff's only contrary testimony is that she occasionally will feel seek after taking some of her medication. (R. 23). However, she has offered nothing to challenge the basic findings that are supported by the record regarding this condition.

Concerning the thyroid problem, the record demonstrates that Plaintiff recently started taking medication for a hyperthyroidism problem. (R. 28, 65). Plaintiff indicated that the medicine made her shake. (*Id.*) She further indicated that the doctor told her this would improve once the medicine impacted the chemical imbalance in her thyroid. (*Id.*)

Concerning her right arm and clavicle, the ALJ found there was little evidence in the record concerning the same. (R. 67). "An x-ray taken in May 2009 showed 'old healed fractures of the mid shaft of the right radius and mid distal right ulna without any

acute abnormalities identified." (*Id.*) Dr. Madden noted that Plaintiff's right forearm was "slightly curved and ha[d] mildly decreased supination." (R. 302). She concluded that Plaintiff's mild problems with the forearm might "cause difficulty with repetitive hand movements." (R. 302-03). However, as found by the ALJ, there was no mention of disabling arm pain in her medical records. (R. 67). These findings are supported by the record.

Finally, with regard to renal failure and drug and alcohol abuse, the record demonstrates Plaintiff was treated in February 2010 without further incident concerning the renal failure (R. 18, 64) and that she has overcome her drug and alcohol abuse (R. 24, 65). In fact, she testified that she no longer used any drugs or alcohol, and that she had been clean for thirteen months.

Premised on his review of the record, the ALJ determined that Plaintiff could perform work at the light level of exertion. (R. 68). It is this finding that Plaintiff initially challenges. The court finds that there is substantial evidence to support this finding. No treating physician or other professional opined that Plaintiff could not work. (R. 67). Plaintiff has not directed the court to any such evidence. Substantial evidence supports this finding.

To the extent that Plaintiff argues that the ALJ's findings lack the required specificity (Doc. 9 at 9), the undersigned disagrees. The ALJ individually and collectively evaluated Plaintiff's various medical conditions and "the intensity,

persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit[ed] [her] functioning." (R. 64). As noted above, he evaluated each malady and its impact, as well as the other available professional opinions, including Dr. Madden and the State Physical Residual Functional Capacity Assessments done by Drs. Roy Rubin and Cassandra Comer. (R. 67).

Madden's assessment supports the ALJ finding of light work with limitations in that she concluded Plaintiff could work being limited only by Plaintiff's forearm which could cause difficulty with repetitive hand movements; that she might have difficulty ambulating or standing or walking for "significant lengths of time;" and she did not need to be around pulmonary irritants. (R. 300-03).

Similarly, the ALJ's determination is supported by the opinions of Drs. Rubin and Comer who conducted their assessments in January 2010 and August 2010, respectively. Each assessed Plaintiff as having limitations consistent with those found by the ALJ. (Compare R. 64 with R. 312-13 and R. 334-35). While their assessments are somewhat dated and premised on the opinion that Plaintiff's functional limitations would resolve within 12 months, which did not happen, the ALJ accounted for that in his assessment of Plaintiff's functional limitations. (R. 67). Accordingly, the ALJ properly credited those opinions in his assessment and in determining Plaintiff's limitations. *See* 20 C.F.R. § 426.927(e)(2).

The ALJ's determination is also consistent with Plaintiff's testimony and evidence. Plaintiff testified that she lived with two roommates. (R. 19-20). She stated that she prepared her meals, does her laundry, cleans her room, does her shopping for clothes and food, and makes her bed. (R. 19-20). She uses a cane and elevates her leg while at home. (R. 17-18, 31-32). However, she has never been told by a physician to elevate her leg. (R. 18). She does limited volunteer work 2-3 hours one day a week. (R.22). She was told by a physician not to walk up steps or lift over fifty pounds.

Plaintiff also argues that the ALJ erred in not adding postural limitations in his RFC findings, "including stooping, kneeling and crouching, which would surely be relevant for an individual with a history of knee surgeries and a candidate for more." (Doc. 9 at 9). In support of this contention, Plaintiff notes that Dr. Comer in her August 2010 report limited pushing and pulling with the right lower extremity to occasional due to pain. (*Id*. (citing R. 334)). Defendant retorts that Plaintiff did not prove that she has postural limitations. (Doc. 10 at 10).

Besides Dr. Comer, Dr. Rubin noted in January 2010 postural limitations concerning use of ladders/ropes/scaffolds due to Plaintiff's right knee situation. (R. 313). The only other postural limitation was noted by Dr. Madden concerning Plaintiff's restricted ability to stand and walk for significant periods. (R. 302). Plaintiff testified that her only restrictions concerned lifting and using stairs. (R. 26). Considering all of this, the substantial evidence demonstrates that Plaintiff is not precluded from performing

the jobs identified by the vocational expert for her, that is, receptionist, office helper, and ticket seller. (R. 39). Accordingly, the absence of any further postural limitations discussion or analysis in the ALJ's determination is not consequential.

In sum, the undersigned finds that the ALJ's decision is supported by substantial evidence.

### 2. Failure to Obtain an Additional Medical Expert Opinion and Develop the Record

Plaintiff next argues that the ALJ failed to utilize the option of obtaining a medical expert opinion to make an informed decision. (Doc. 9 at 9). As a part of this argument, she asserts that the ALJ failed to develop the record by obtaining a consultative examination to address the change in her knee condition. (*Id*.)

Plaintiff is correct that the ALJ has a duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). "However, an ALJ has no duty to order a consultative evaluation where a sufficient record exists to make a determination and no previous treating or consultative physician has recommended an additional evaluation." *Bentley v. Astrue*, 2012 WL 4479273, *2 (N.D. Ala. September 25, 2012) (citing *Wilson*, 179 F.3d at 1278 and *Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007)). Similarly, a consultative examination "may" be obtained "where the evidence as a whole is insufficient to support a determination or decision on [a] claim." 20 C.F.R. § 416.919a(b); *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) ("The regulations 'normally require' a consultative examination only when necessary information is not in

the record and cannot be obtained from the claimant's treating medical sources or other medical sources"). Finally, "[w]hen alleging disability, the claimant carries the burden of proving that he is disabled, and he alone is responsible for producing evidence to support his claim." *Bentley*, 2012 WL 4479273, *2 (citing 20 C.F.R. §§ 404.1512(a), 416.912(a); *Ellison*, 355 F.3d at 1275).

The record as discussed above is sufficient to support the ALJ's decision. He was not required under the circumstances to seek additional consultative evidence. Plaintiff simply failed to carry her burden of proof in this matter.

## IV. CONCLUSION

For the reasons set forth above, the undersigned fins that the decision of the Commissioner is due to be **AFFIRMED**. An appropriate order will be entered separately.

**DONE**, this the 4th day of February, 2014.

John E. Ott

**JOHN E. OTT**
Chief United States Magistrate Judge